UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CITY OF SEYMOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00034-SEB-TAB |
| | ) | |
| LAMAR ADVANTAGE GP COMPANY, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT (DKTS. 24, 32)**

By a motion for partial summary judgment, Dkt. 32, *see* Fed. R. Civ. P. 56(a), and a motion to dismiss for failure to state a claim, Dkt. 24, *see* Fed. R. Civ. P. 12(b)(6), Plaintiff and Defendant respectively seek judgment as a matter of law on a single question of contract interpretation: Has their contract expired? We conclude that it has.

## Background

Fourteen years ago, on July 7, 2005, Hoosier Outdoor Advertising Corporation ("Hoosier Outdoor") and The Elmore Family Limited Partnership ("the Elmores") entered into a contract ("the Lease") for the lease of certain real property owned by the Elmores in Seymour, Indiana ("the Property"), to be used for the display of three billboards. The Lease was for a period of six years beginning August 15, 2005, at $4,000 annual rent, and contains the following evergreen clause ("which is to say, an automatic rollover clause," *Office & Prof'l Emps. Int'l Union, Local 95 v. Wood Cty. Tel. Co.*, 408 F.3d 314, 315 (7th Cir. 2005)):

1

> Lessor agrees that this contract shall renew itself at each expiration date unless (60) sixty days [*sic*] written notification prior to each expiration date is provided to Lessee. No cancellation of this contract is possible by any entity with powers of eminent domain.

Dkt. 1 Ex. 1, at 7. The Lease is only nine paragraphs in length and the two above-quoted sentences constitute the entirety of its sixth paragraph.

The words "cancel" or "cancellation" appear nowhere else in the one-page Lease. *Id.* The Lease refers three times to its "termination": twice in connection with Hoosier Outdoor's rights and obligations "upon the termination" of the Lease, and once in connection with Hoosier Outdoor's option "to terminate" the Lease "upon 30 days [*sic*] notice" if the Lease becomes unprofitable for it for one of five listed reasons. *Id.* Thus, the Lease contemplates its own end by one of only two ways: by expiration following the Elmores' nonrenewal or by termination at Hoosier Outdoor's option under the appropriate circumstances.

On August 15, 2011, the first six-year period ended and, absent notice of nonrenewal from the Elmores, the Lease renewed itself automatically for an additional six-year period. On June 15, 2017, sixty-one days before the end of the second six-year period, the Elmores sold the Property to Plaintiff here, the City of Seymour ("the City"), and assigned to it their rights under the Lease. Sometime earlier, Hoosier Outdoor had merged with Defendant here, Lamar Advantage GP Company, LLC ("Lamar"), and assigned its rights under the Lease to it. The terms of either assignment do not appear in the record and have not been otherwise elaborated upon by the parties.

The same day as the City acquired the Property and stepped into Hoosier Outdoor's shoes as the lessor under the Lease, the City's mayor sent Lamar a letter which reads in relevant part as follows:

> Please consider this letter to be our written notice of cancellation for the billboard lease executed by and between Hoosier Outdoor Advertising and The Elmore Family Limited Partnership . . . . As of this day, the City of Seymour has acquired the land from The Elmore Family Limited Partnership and is hereby cancelling the lease. We understand that the lease does not officially expire until 8/15/17. Further, we understand that you are granted 90 days from the time the lease is terminated to remove the sign . . . . You may continue to operate the sign up to and through that date[.]

Dkt. 1 Ex. 1, at 11. Despite receipt of this notice, Lamar refused and continues to refuse to vacate the Property, giving rise to this lawsuit by the City for trespass, ejectment, and a declaratory judgment declaring the Lease expired.

## Analysis

The City seeks summary judgment on its declaratory judgment claim. Lamar seeks dismissal with prejudice of the entire lawsuit. Both parties agree that the dispositive question is whether the Lease expired on August 15, 2017. Either party's motion will be granted only if the contract and other attachments to the complaint unambiguously support its position (the City has eschewed reliance on extrinsic evidence in support of its motion). *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601–02 (7th Cir. 2015) (plaintiff's motion for summary judgment); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (defendant's motion to dismiss on basis of complaint attachments). Under *Erie Railroad Company v. Thompkins*, 304 U.S. 64 (1938), we apply

Indiana law to this removed diversity action, *see* Dkt. 1, because that is our default choice, *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994), and because neither party disputes its applicability. *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 427 (7th Cir. 1991).

The parties' dispute chiefly revolves around three points. We begin, as do the parties, with the plain language of the Lease. *Citimortg., Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). First, it is undisputed that the City is an "entity with powers of eminent domain." *See* Ind. Code ch. 32-24-2 ("[Eminent Domain] Procedures for Cities and Towns"). And the Lease provides that "[n]o cancellation" of it "is possible by any entity with powers of eminent domain." Dkt. 1 Ex. 1, at 7. Therefore, argues Lamar, the City's "written notice of cancellation" purports to do precisely what the Lease prohibits it from doing and is thus of no force or effect. Not so, counters the City: the mayor's unlawyerly choice of words notwithstanding, the City did not *cancel* the Lease; it declined to renew it, as provided by its terms. A distinction without a difference, scoffs Lamar.

The issue, no surprise, is not quite so straightforward as either side represents it to be. In the abstract, the City's distinction between cancellation and expiration by nonrenewal is persuasive. "The cancellation of a contract means that portion of the contract remaining unperformed is abrogated." *Horine v. Greencastle Prod. Credit Ass'n*, 505 N.E.2d 802, 805 (Ind. Ct. App. 1987) (distinguishing cancellation and rescission). By contrast, "[a]n expiration does not halt performance that would otherwise be owed, but marks the point in time when no more performance is required." Pl.'s Br. Supp. & Opp. 5 (citing *Expiration*, Black's Law Dictionary (10th ed. 2014)). What has expired has not been canceled; what has been canceled has not expired. The distinction is often of great

moment in insurance contracts, for example, if the law requires notice to the insured upon "cancellation" of the policy. *See, e.g., King v. Guardian Life Ins. Co. of Am.*, 686 F.2d 894, 898 (11th Cir. 1982); *Estate of Nicholson v. Farmers Ins. Co.*, 555 F. Supp. 2d 671, 675 (E.D. La. 2008); *Unruh v. Prudential Prop. & Cas. Ins. Co.*, 3 F. Supp. 2d 1204, 1206 (D. Kan. 1998).

The City's distinction becomes less cogent, however, when considered not in the abstract but in the context of the Lease's evergreen clause. *See Barabas*, 975 N.E.2d at 813 (contractual language read in context). The City fails to account for the fact that the cancellation provision immediately follows the evergreen clause, together constituting the entirety of the Lease's sixth paragraph, and that "cancellation" is nowhere else mentioned in the Lease. This raises a reasonable inference that "cancellation" in fact refers to nonrenewal. And in the context of evergreen clauses specifically, which contemplate affirmative acts of nonrenewal as opposed to affirmative acts of renewal, contract drafters and their judicial expositors often refer to nonrenewal of the contract as a "cancellation" of the contract. *See, e.g., Utica Mut. Ins. Co. v. Great Lakes Coal. Co.*, No. 89-1517, 1990 WL 146573, at *1 (7th Cir. Oct. 5, 1990) (mem.); *Johnson v. Aleut Corp.*, 307 P.3d 942, 944 (Alaska 2013); *Cook v. Adams Cty. Plan Comm'n*, 871 N.E.2d 1003, 1008 (Ind. Ct. App. 2007).

On the other hand, the cancellation provision is immediately followed by provisions that permit the lessee to terminate the Lease in a manner that is far closer to cancellation in the strict sense (by abrogating its remaining performance in the midst of a six-year period) than is nonrenewal, even nonrenewal of an automatically renewing

5

contract. The cancellation provision could thus plausibly refer to what follows it and not to what precedes it. We note, too, the missed opportunity for clarity in the notice provision. "Written notification"—of what? Either "of nonrenewal" or "of cancellation" likely would have been determinative of the parties' interpretative dispute.

Finally, because at the time it was drafted neither party was "an entity with powers of eminent domain," and because neither the cancellation provision in particular nor the Lease as a whole unambiguously contemplates a future assignment, and it may be just as sensible to read the cancellation provision as referring to third-party governmental action (i.e., "The Lease may not be terminated because of the act of an entity with powers of eminent domain.") as to first-party governmental action (i.e., "If rights under this Lease are ever assigned to an entity with powers of eminent domain, the right to terminate the Lease is excluded from the assignment."). Indeed, "'[a] valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor.'" *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010) (quoting *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993)). If the Elmores' assignment of their rights under the Lease to the City was "'valid and unqualified,'" *id.* (quoting *Rasp v. Hidden Valley Lake, Inc.*, 519 N.E.2d 153, 158 (Ind. Ct. App. 1988)), it may be preferable to give full effect to that assignment rather than drastically restricting its scope by eliminating the assignee's right to terminate on the basis of an ambiguous provision that nowhere refers to assignment.

Because reasonable people could thus disagree on whether "cancellation" in the Lease refers to its nonrenewal, *Barabas*, 975 N.E.2d at 813 (ambiguity standard), it appears that a jury is required to choose between the two possible meanings. *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537–38 (1958) (federal juries decide disputes of fact); *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990) (contractual ambiguity is dispute of fact). Again the City says, Not so, for two rules of construction dictate that Lamar's construction cannot be sustained as a matter of law— the second and third of the three points chiefly disputed by the parties. *See First Fed.*, 559 N.E.2d at 604 (ambiguous contracts may be construed).

The first is that

> [t]he law does not favor perpetual leases. A lease will not be construed as conferring a right to perpetual renewals unless it clearly so provides, in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. A lease will, if possible, be so construed as to avoid a perpetuity by renewal.

*Smyrniotis v. Marshall*, 744 N.E.2d 532, 534–35 (Ind. Ct. App. 2001) (quoting *Geyer v. Lietzan*, 103 N.E.2d 199, 200 (Ind. 1952)).

The lease in *Geyer* provided that

> the lessee shall, at his option, be entitled to the right . . . of renewing this lease . . . providing that said lessee shall, at least thirty . . . days before the expiration of any two year period of this lease, or any successive renewals thereof, give written notice of his intention so to renew to the lessors[.]

103 N.E.2d at 201. Conceding that "the foregoing language, in isolation, would be strongly indicative of an intention to confer upon the lessee the right to renew the lease

7

indefinitely[,]" *id.*, the court turned to features of the lease which it regarded as "totally inconsistent with the idea that the parties had in mind a term which might last several centuries[,]" *id.* including the lack of perpetual language such as "forever," "for all time," or "in perpetuity," *id.*; providing that the property was to be yielded up to the lessors "in as good condition" as when leased; limiting of the use of the property to "conducting a general merchandising business," *id.*; rent terms which if applied in perpetuity would operate either to cap rent forever after six years or else permit it to increase forever into infinity, *id.*; and impliedly limiting the right of renewal to the original lessee personally by not expressly permitting its exercise by the original lessee's privities, such as his assigns. *Id.* at 201–202. Concluding that the lease did not "so clearly provide for perpetual renewals as to leave no doubt that such was the purpose and intention of the parties[,]" the court held it was not a perpetual lease. *Id.* at 202.

The court held further that, since the lease did not provide for infinite renewals (because it was not perpetual), if the lease were construed to provide for more than one renewal without expressly stating how many, it would be indefinite in its material terms and void. *Id.* at 202 (citations omitted). Unwilling to construe the lease so as to render it unenforceable, the court construed it to provide for precisely one renewal. *Id.*

Relying on *Geyer*, the Indiana Court of Appeals has held that lease language giving the lessee "the right to renew lease [*sic*] on a month to month basis" did not create a perpetual lease in the lessee's favor but a month-to-month tenancy, by statute terminable with one month's notice by the lessor. *Smyrniotis*, 744 N.E.2d at 533. The Indiana Court of Appeals applied *Geyer* to an evergreen clause in *Cook v. Adams County*

*Planning Commission*, 871 N.E.2d 1003 (2007), in the course of answering whether an automatically renewing one-year lease was a "long-term lease" within the meaning of a certain county ordinance. The lead opinion held that, because the lease neither was unequivocally perpetual nor specified a determinate number of renewals, *Geyer* required a court to construe the lease as providing for precisely one renewal. *Id*. at 1009. The lease so construed was thus for two years and therefore not "long term." *Id.*

Here, the City argues that, because it is possible to construe the Lease so as not to prohibit the City from terminating it by nonrenewal, under *Geyer* it should be so construed. If not so construed as between the City and Lamar, the right to terminate the Lease would be even narrower than in *Geyer*. On Lamar's construction, the Lease would never be terminable by the City and only terminable by Lamar for one of five causes largely or completely outside its control (for example, an inability to obtain a required permit from a public authority, or a regulatory elimination of the Property's suitability for advertising). But, adopting Lamar's construction for the sake of argument, would it truly be impossible to construe the Lease as anything other than a perpetual lease, as the City argues? No, it would not—and the City must prevail for that reason.

*Geyer* considered the lease as a whole. We assume the Lease expressly provided, "If rights under this Lease are ever assigned to an entity with powers of eminent domain, the right to terminate the Lease is excluded from the assignment." The Lease would still, as in *Geyer*, lack perpetual language such as "forever," "for all time," or "in perpetuity." 103 N.E.2d at 201. It would still, as in *Geyer*, make provision for restoring the Property to its pre-Lease condition by permitting the lessee to remove its signs upon termination.

9

*Id.* It would still, as in *Geyer*, make specific provision for "one particular and narrow use" of the Property, *id.*, by its references to, for example, "three illuminated outdoor billboards" and the lessee's rights to "ingress and egress to the site(s) for the purpose of working on signs and controlling weed, brush, and tree growth affecting sign structure(s)." Dkt. 1 Ex. 1, at 7. And it would still, as in *Geyer*, prove economically irrational if extended into perpetuity, for it makes no provision at all for rent increases. 103 N.E.2d at 201; *Smyrniotis*, 744 N.E.2d at 535.

In short, the Lease would still contain most of the same features that *Geyer* regarded as "totally inconsistent with the idea that the parties had in mind a term which might last several centuries." 103 N.E.2d at 201. The inclusion of a limitation on a future potential assignee's termination rights does not materially change this balance. The Lease might never be assigned to an entity with powers of eminent domain, or might just as soon be assigned again to an entity without powers of eminent domain. Read as a whole, it cannot be said that the Lease provides for a perpetual term "in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties." *Id.* at 200. Thus, even on Lamar's construction of the cancellation provision, the Lease is not perpetual. Lamar agrees. Def.'s Reply Br. & Br. Opp. 17. The presumption against perpetual leases therefore does not preclude Lamar's construction of the cancellation provision.

*Geyer* now compels us to part company with Lamar. For, also like the *Geyer* lease, the Lease here provides for renewals generally without providing for a determinate number of them. *Geyer*, 103 N.E.2d at 202; *Cook*, 871 N.E.2d at 1009. Because (as we

have just established) the Lease does not provide for infinite renewals, if the Lease is construed to provide for more than one, it is materially indefinite and void. *Geyer*, 103 N.E.2d at 202 (citations omitted); *Cook*, 871 N.E.2d at 1009 (citing *Geyer*). It appears to us that the Lease must therefore be construed to provide for precisely one renewal, given that a court should avoid construing a contract so as to render it unenforceable. *Geyer*, 103 N.E.2d at 202 (citations omitted); *Cook*, 871 N.E.2d at 1009 (citing *Geyer*). If that is so, then the Lease expired on August 15, 2017, and the City is entitled to judgment.

The City's opening brief in support of its motion and in opposition to the City's comes upon this argument by a somewhat muddled approach (having just argued that to give the Lease's cancellation provision Lamar's construction would render it a perpetual lease), but the argument is nonetheless raised quite clearly and succinctly. Pl.'s Br. Supp. & Opp. 10. Lamar to its detriment has not responded to it and indeed concedes its premise (i.e., that the Lease as a whole does not unambiguously intend a perpetual term). Def.'s Reply Br. & Br. Opp. 17. We lay no traps for the unwary by granting relief on the basis of an argument fairly, albeit briefly, raised.

The final area of disagreement between the parties is the effect of Indiana's statutory prohibition on municipal leases longer than three years without legislative approval. *See* Ind. Code § 36-1-11-10(f). Finding that the City is entitled to judgment on the grounds above stated, we need not consider this statute.

## **Conclusion and Order**

For the reasons given above:

Defendant's motion to dismiss for failure to state a claim, Dkt. 24, is DENIED.

11

Plaintiff's motion for partial summary judgment as to Count I of the complaint, Dkt. 32, is GRANTED.

A declaratory judgment will be entered by separate document at the time of final judgment in this matter. *See* Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 3/26/2019

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mark Jason Crandley
BARNES & THORNBURG, LLP (Indianapolis)
mcrandley@btlaw.com

Bradley M. Dick
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bdick@boselaw.com

Alan S. Townsend
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
atownsend@boselaw.com